McLenahan *v.* McLenahan and Johnston.

---

## McLenahan *vs.* McLenahan and Johnston.

If lands descend or are devised, subject to a mortgage not made by the decedent, the heir or devisee takes *cum onere*, unless the decedent shall have assumed the debt in such manner as to show an intention to charge his personal estate. Making himself or his representative liable to be called on by the mortgagee, is not sufficient, of itself, to charge the personal estate in relief of the lands.

The bill was filed by the complainant, heir-at-law of Robert McLenahan, deceased, against his administrator and widow, to compel the administrator to pay a mortgage debt out of the personal estate of the intestate, in exoneration of mortgaged lands descended to the complainant, and to restrain him from settling his final account and distributing the estate until such payment shall have been made. The intestate had purchased the lands subject to the mortgage in question, but had not expressly assumed or covenanted to pay the mortgage by the deed to him, which only recited that the land was conveyed subject to the mortgage. The amount of the mortgage money had been retained by him from the consideration.

Answers were filed by the widow and administrator, and the cause was heard on a motion to dissolve the injunction granted.

*Mr. Shipman,* for Sarah Ann McLenahan, in support of the motion, contended:

That it was a settled principle, that where lands descended, subject to a mortgage debt not contracted by the intestate,

but which was a lien on the lands when he acquired the title, the lands descended *cum onere* to the heir, and that he was not entitled to have the personal estate applied to pay the debt, in exoneration of the real. And for this he cited 2 *Jarman on Wills* 556, 559, &c.; *Cumberland* v. *Codrington*, 3 *Johns. C. R.* 229; 1 *Story's Eq. Jur.*, § 556; 2 *Ibid.*, § 1248; *Billinghurst* v. *Walker*, 2 *Bro. Ch. Cas.* 604, *and* 608–9, notes; *Keyzey's case*, 9 *Serg. & R.* 73; *Tweddell* v. *Tweddell*, 2 *Bro. Ch. Cas.* 101; 2 *Williams on Ex'rs* 1207; *Ram on Assets* [357]; 4 *Kent* 420; *Aldrich* v. *Cooper*, 2 *Lead. Cas. in Eq.* 226; *McLearn* v. *McLellan*, 10 *Peters* 625; *Hamilton* v. *Worley*, 4 *Bro. Ch. Cas.* 199; *S. C.*, 2 *Ves.* 62, note.

*Mr. Vliet*, for administrator, on same side.

The administrator is not liable for this debt. *Stevenson* v. *Black, Saxt.* 338; *Tichenor* v. *Dodd*, 3 *Green's C. R.* 454.

And if he had been, he is discharged by the decree of the orphans court barring creditors, set up in the answer. *Nix. Dig.* 589, § 70; 590, § 74.

*Mr. Van Syckel*, for complainants, opposed the motion and contended:

That where the purchaser of an equity of redemption renders himself liable to pay the debt, his heir is entitled to have it paid out of the personal estate, in exoneration of the land. 2 *Jarman on Wills* 546; 4 *Kent* 420; 1 *Story's Eq. Jur.*, § 571; *Livingston* v. *Newkirk*, 3 *Johns. C. R.* 312; *Davies* v. *Topp*, 1 *Bro. Ch. Cas.* 524; *Galton* v. *Hancock*, 2 *Atk.* 424.

That whatever may be the rule elsewhere, in New Jersey it is settled, that when the equity of redemption is conveyed subject to the mortgage, and the amount of the mortgage is retained from the purchase money, the grantee is liable at law and in equity for the debt, to the mortgagee, and being personally liable, it must be paid out of his personal estate by his administrator. *Finley* v. *Simpson*, 2 *Zab.* 311; *Bolles* v. *Beach, Ibid.* 680; *Klapworth* v. *Dressler*, 2 *Beas.* 62.

He further asked leave to amend the bill, by alleging that the intestate at the conveyance to him verbally promised the grantor to pay this debt.

He further cited and commented on *Bagot* v. *Oughton*, 1 *P. W.* 347; *Parsons* v. *Freeman*, *Amb.* 115; *Lawson* v. *Hudson*, 1 *Bro. Ch. Cas.* 58; *Evelyn* v. *Evelyn*, 2 *P. W.* 664; *Shafto* v. *Shafto*, *Ibid.*, note to *p.* 664; *Woods* v. *Huntingford*, 3 *Ves.* 130; *Tweddell* v. *Tweddell*, 2 *Bro. Ch. Cas.* 101, 153; *Cope* v. *Cope*, 2 *Salk.* 450; *Hayter* v. *Rod*, 1 *P. W.* 362; *Lingen* v. *Sowray*, *Ibid.* 172; *Chaplin* v. *Homer*, *Ibid.* 483; *Serle* v. *St. Eloy*, 2 *P. W.* 386.

THE CHANCELLOR.

Although the personal estate is the primary fund for the payment of the debts of a decedent, the rule is limited to debts created by him, or for which he has rendered himself personally liable, directly and primarily. Where lands subject to a mortgage debt, not created by the decedent, descend or are devised, the heir or devisee takes them *cum onere*, and is not entitled to have the debt paid out of the personal estate, unless the decedent has directly assumed the debt, intending to make it a charge on his personal estate, or shall have so directed expressly by his will. It is not enough that he has assumed to pay the debt, or has rendered himself liable to be called on directly by the creditor to pay it.

The authorities, ancient and modern, are uniform on these principles, although there is some difference as to what shall show the intention to assume the mortgage debt as a primary lien on the purchaser and his personal estate. The case of *Belvidere* v. *Rockfort*, decided in the house of lords, and reported in 6 *Bro. P. C.* 520, goes the furthest in favor of the heir. This case falls far short of that. In that, there was a covenant in the deed that the grantee would pay off the mortgage, " out of the consideration *money* in this present deed expressed." and even that case was doubted and disapproved by Lord Thurlow.

The authorities are collected in 2 *Jarman on Wills*, *p.* 546,

&c., and are thoroughly reviewed and discriminated by Chancellor Kent, in *Cumberland* v. *Codrington*, 3 *Johns. C. R.* 229, which the great learning and ability of that distinguished jurist, will always make a leading case on this subject.

The decisions in New Jersey, relied upon for the complainant, do not affect the application of the rule as established in England, in this case.

In many of the English cases referred to, in which the personalty was held not to be liable to the debt, in discharge of the land, there were covenants to pay the debt, and the ancestor, or his personal representatives, could have been compelled to pay it. *Shafto* v. *Shafto*, 1 *P. W.* 664, *note; Tankerville* v. *Fawcet*, 2 *Bro. Ch. Cas.* 57; *Tweddell* v. *Tweddell, Ibid.* 101; *Billinghurst* v. *Walker, Ibid.* 604; *Butler* v. *Butler*, 5 *Ves.* 534.

The result at which Chancellor Kent arrives is this: " There must be a direct communication and contract with the mortgagee, *and even that is not enough*, unless the dealing with the mortgagee be of such a nature as to afford decided evidence of an *intention* to shift the primary obligation from the real to the personal fund." 3 *Johns. C. R.* 262.

There is, in this case, no contract with the mortgagee, and nothing to show an intention to shift the primary obligation.

The proposed amendment to the bill would not affect the result.

I am of opinion that the injunction should be dissolved, and the bill dismissed with costs.