MARY MARTIN

*v.*

HELEN C. MARTIN et al., executors, &c.

[Decided September 10th, 1912.]

1. A will which, after certain bequests and devises, gives to testator's widow and daughter the household goods and furnishings of his city home and on his farm, to be mutually enjoyed by them while they live together, with provision for its division if they separate, and for all of it going to the survivor, if either dies before a separation, gives to the widow during her widowhood, and till she remarries, $20 a week from the income of testator's business directed to be conducted after his death, and gives the residue of the estate in trust, the net income thereof, after the daughter becomes of age, to be divided equally between them, with provision that on the death or remarriage of the widow, if the daughter is then of age, the trustees shall convey and deliver all the residue to the daughter, subject to the widow's dower right and to the bequests to them, is intended to fully provide for the widow, with right of dower in the residue only in case she remarries; so that she is required to elect to take under or against it.

2. A widow makes no election to take under or against her husband's will, where the executors make, and she receives, payments directed by the will, and also payments as dower in certain parcels of land; she claiming, and they considering, she was entitled to both under the will.

Heard on bill, answers, replications and proofs.

*Mr. Aloysius McMahon,* for the complainant.

*Mr. Frank G. Turner,* for Helen C. Martin.

*Mr. John F. Marion,* for Ellen Meany.

GARRISON, V. C.

In the present state of the pleadings in this suit the only issue to be determined is whether an injunction should or should not issue.

The complainant is the daughter of one Philip E. Martin (who died September 26th, 1903), and the defendant Helen C. Martin (widow of Philip), and Ellen Meany (sister of Philip), are the executrices of his will.

The will (and a codicil) of Philip E. Martin was as follows: .

"In the name of God, amen—I, Philip E. Martin, of the City of Jersey City, County of Hudson and State of New Jersey, being of sound and disposing mind and memory, do make publish and declare this as my last will and testament hereby revoking any and all former wills by me made.

"*First.* I direct that all my just debts and funeral expenses be paid as soon after my decease as convenient.

"*Second.* I give and bequeath unto my daughter Mary my Hunting case gold watch (which may be identified by my monogram on the outer case, and my name on the inner case), my diamond collar button, and my small diamond stud.

"*Third.* I give, and bequeath to my son Ignatius my large gol hunting case watch with gold chain, my large diamond stud, and my diamond cuff buttons.

"*Fourth.* I give bequeath and devis unto my son Ignatius my house and lot known as 138 Maple Street, to him his heirs and assigns forever.

"*Fifth.* I give bequeath and devise unto my son Joseph, my house and lot known by the street number as 138½ Maple Street, to him his heirs, and assigns forever.

"*Sixth.* I give and bequeath to my wife Helen C. Martin, and to my said daughter Mary, all my household furniture and furnishings in my house number 240 Grove Street, in Jersey City aforesaid, also on my farm near Great Falls, Green County N. Y. to be equally enjoyed by them while they live together: upon their separation it is my desire that they fairly divide the same. Upon the death of either before separation, the whole shall go to the survivor.

"*Seventh.* It is my wish, and I desire the plumbing business now carried on by myself and Michael P. Laverty under the firm name of Philip E. Martin and Company, at No. 187 Montgomery Street, Jersey City, be continued after my decease by my executors hereinafter named, until my son Ignatius has attained the age of twenty-one years, and then it is my desire and I direct that all the right, title and interest that I may have, shall be transferred by my executors to my said sons Ignatius and Joseph, if they shall have proven themselves capable of carrying on the same, otherwise my executors shall continue to carry on the said business until my said sons Ignatius and Joseph shall have proven their capability, but if my executors shall determine that said business can no longer be carried on profitably, then I direct that they sell and dispose of all my right, title and interest in and to the said business, at public or private sale as their judgment may direct. It is my further wish, and I direct that my executors hereinafter named, shall out of the proceeds of said plumbing business so conducted by them, pay to my wife, Helen C. Martin, the sum of Twenty dollars

per week for household expenses, and it is to be understood that the transfer of said plumbing business to my sons Ignatius and Joseph is made upon the condition that they pay to my wife Helen C. Martin the sum of twenty dollars per week during her widow-hood, and until her re-marriage, the said payment to come out of the proceeds of the business so conducted by them, and I direct that in case my partner Michael F. Laverty desiring dissolution, I hereby authorize and empower my executors hereinafter named to purchase his said interest at their discretion.

"*Eighth.* All the rest and residue of my estate, both real and personal of whatsoever kind and wheresoever found, I give and devise unto my executors hereinafter named, in trust for the following purposes: when my youngest living child Mary shall have attained the age of twenty-one, the net income from all investments which may have been made, shall be equally divided between my wife Helen C. Martin and my daughter Mary. That none of my real estate be sold until my daughter Mary shall attain the age of twenty-one, and if at any time after my daughter Mary attains the age of twenty-one years, my executors hereinafter named may term it for the best interest for my estate to sell the same or parcels thereof, then I authorize them to sell and dispose of the same or such parcels thereof as from time to time in their judgment they may deem advantageous to do, either at private or public sale, as may be most beneficial for my estate, hereby authorizing them to make, execute and deliver any and all proper necessary deeds conveying the same, the purchaser, thereof to be relieved from the proper application of the purchase moneys. Upon the death or re-marriage of my wife, if my daughter Mary shall then have attained the age of twenty-one years. I direct that my executors and trustees or theur successors shall convey and deliver all of the residuary of my estate, both real and personal, to my daughter Mary, subject however to my wife's dower right in any real estate, and subject to the bequest to them of personal property made.

"*Ninth.* I hereby constitute and appoint my wife Helen C. Martin, and my sister Ellen Meany of Tarrytown, N. Y. the executrices of this my last will and testament. It is however, my will that if upon my said daughter attaining the age of twenty-one years, my said sister removing as such executrice in favor of my said daughter, and that my wife and my said daughter be thereafter executrices thereof, whatever powers are given to the executrices hereof are vested in the survivors of them."

Mary, the daughter, and Helen, the mother, continue to live together. Helen has not remarried. Two pieces of real estate belonging to the testator at the time of his death have been sold. The executrices have paid to the widow a sum equal to her dower right in one such piece. They were about to pay her a sum equal to her dower right in the other when this bill was filed praying for an injunction to prohibit them from so doing. Other small

sums of money have been paid the widow and Mary as the one-half each of the income of the residuary estate. The plumbing business failed immediately after the death of Philip and nothing came out of it to her.

The contention of the complainant is that by a proper construction of the whole will the widow is put to her election either to accept the benefits of the will and forego her dower (which she would then only get if she remarried and thereby forfeited the other provisions in her favor), or accept her dower and forego the other provisions in the will.

The contention of the widow is that she is entitled to all the will gives her plus her dower.

Although the will is very badly drawn, and it is difficult to extract from it the actual intention of the testator in all respects, I think it is reasonably clear that in the matter that is relevant in the suit he meant to provide as follows: His widow and daughter were to have the mutual enjoyment of the household goods and furnishings in his Jersey City house and on the farm in New York state, with provisions at the separation and death of either. His widow was to have $20 per week from the plumbing business during her widowhood and until her remarriage. All the rest of the estate was to be held by the executrices in trust. The net income (after Mary became twenty-one) was to be divided between the widow and Mary. Upon the death or remarriage of the widow all the principal was to go to Mary. If the widow remarried all other provisions in the residuary clause in her favor were to cease, but she then was to have her dower in the real estate, which latter would, upon such remarriage of the widow, go to Mary.

There is no provision as to what shall become of the income from the residuary estate between her death and the time Mary reached twenty-one years of age; and there are other notable omissions, but we are not now concerned therewith.

I consider it entirely clear that the testator, by his will, intended to fully provide for the widow, and that therefore the perfectly plain and, in fact, only implication is that she must elect to take under the will or against it. Any other view is entirely repugnant to the provisions of the will and utterly

destroys the attempted disposition of his estate. The widow is given a certain amount out of the plumbing business and one-half of the income of the entire estate. It is inconceivable that the intention of the testator was also to permit her to have dower. It is to me so clear that elaboration in unnecessary.

It is impossible, from the way in which the parties have dealt with the matter to determine what, if any, election the widow has made. She has been paid some money as income from the residuary estate—a very small amount, I believe—she has been paid some money probably as dower—that is, it was a sum exactly equal to what her dower, properly calculated, would have been in the parcel sold. She takes the ground that she was not called upon to elect, but was entitled to both the provisions of the will and the dower besides. The complainant contends that the widow has elected to take under the will and cannot, therefore, have dower. I think the contention of the complainant is correct to this extent—that the widow is put to her election by the law as properly applied to this will. But I disagree with so much of the complainant's contention as insists that the widow has made an election, or, at any rate, an irrevocable election.

I think it extremely doubtful if it would be proper to find that the widow by her conduct could be said to have made any election at all; and surely it would be improper to hold that she has made a binding, irrevocable election.

I conclude that the widow must elect—that she has not yet made a binding, irrevocable election—that she may now make her election, and that the injunction as prayed for must be granted to prevent the executrices paying the widow the dower out of the sale of the second parcel until and unless she elects to take dower. If she does so elect, then I presume there would have to be an accounting of what she had received under the residuary clause of the will, and a repayment thereof by her to the estate, or a deduction thereof from the sum due her as dower.

I incline to the opinion that before this case can be properly disposed of there should be a cross-bill by the executrices praying for a construction of the will and directions, and by the widow praying for whatever relief she would be entitled to if her theory

of the case was sustained, and proper pleadings in response to such cross-bills by the defendants in each. If this were done, the court could then make a decree disposing of the whole matter; whereas, in the present state of the pleadings, all that it is proper for the court to do is to grant an injunction restraining the payment of the dower under the existing conditions.

Let counsel come before me upon notice to obtain orders to amend, &c.